## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

Lauren N. McCauley,                    )

                                        )

            Plaintiff,           )

                                        )        Case No.: 19-cv-50005

            v.                 )

                                        )        Mag. Judge Margaret J. Schneider

Andrew Saul,                    )

Commissioner of Social Security,    )

                                        )

            Defendant.       )

## <u>MEMORANDUM OPINION AND ORDER</u>

       Plaintiff Lauren N. McCauley appeals a denial of disability insurance benefits.  For the reasons set forth below, her motion for summary judgment, Dkt. 14, is granted and the Commissioner's motion for summary judgment, Dkt. 20, is denied.  The decision of the ALJ is reversed and the case is remanded.

## BACKGROUND

### A.  Procedural History

       Plaintiff Lauren McCauley ("Plaintiff") filed an application for disability insurance benefits on January 20, 2015.  R. 180.  She alleged a disability beginning on September 11, 2014, and her date last insured is March 31, 2016.  R. 17.  The application was denied initially on April 29, 2015 and upon reconsideration on August 13, 2015.  R. 90, 103.  Plaintiff filed a written request for a hearing on September 21, 2015.  R. 114.  On July 31, 2017, a hearing was held by Administrative Law Judge (ALJ) Lana Johnson where Plaintiff appeared and testified.  R. 34-73.  Plaintiff was represented by counsel.  *Id.*  An impartial vocational expert also appeared and testified via telephone.  *Id.*

    On January 3, 2018, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits and supplemental security income.  R. 12-33.  Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review.  R. 1-6.  Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.  *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### B.  Medical Background[1]

       On September 11, 2014, Plaintiff suffered several injuries as a result of a car accident.  R.

---

[1] This section is a summary of Plaintiff's medical history that is relevant to this appeal and does not represent Plaintiff's entire medical history.

44-45. X-rays of her right foot showed a talas fracture and subtalar dislocation. R. 430, 434. Plaintiff underwent two ankle surgeries on September 11, 2014 and September 12, 2014. R. 333. On September 24, 2014, Plaintiff had open reduction internal fixation (ORIF) surgery on the ankle. *Id.*

On March 12, 2015, treating orthopedic surgeon David Goodspeed noted that Plaintiff had a difficult time following postop recommendations due to "body habitus" (i.e. her physique) and transportation issues, and showed failure of her fracture fixation. R. 480. A physical examination of Plaintiff showed that while she was able to walk without her boot, she avoided weight bearing through her forefoot. R. 479. Imaging of the right ankle showed that hardware in the ankle was broken, and Dr. Goodspeed recommended further ankle surgery. R. 479-80. On March 16, 2015, consulting internist Dr. Jorge Aliaga examined her and observed that she was in mild pain in the right lower leg when walking and that she wore a boot. R. 498-99. He noted that there was a decrease of about 5 to 10 degrees in all joints due to her obesity, and a decrease of range of motion in the right ankle due to pain. R. 499. She had some difficulty getting on and off of the exam table, and was unable to heel-walk, toe-walk tandem gait, squat and arise. *Id.*

On July 6, 2015, Plaintiff was seen by treating specialist Dr. R. Nemerovski. R. 503. She rated her current pain level at an 8/10, which she reported was worse when she walked or stood but improved if she sat or laid down. R. 507. Nemerovski reported that Plaintiff had an antalgic pain with inability to bear weight on the injured foot, and decreased range of motion and tenderness of her right ankle. R. 509. Nemerovski diagnosed her with chronic pain of the right ankle due to trauma and prescribed her pain medication. *Id.* On August 24, 2015, treating orthopedic surgeon James Berg reported that there was probably aseptic necrosis because the screws had started to break, indicating a lack of complete healing. R. 674. Dr. Berg referred Plaintiff to Dr. Michael Pinzur, an orthopedic foot specialist who recommended removal of the hardware and tibiotalocalcaneal arthrodesis with allograft. R. 688. Plaintiff underwent this procedure on November 30, 2015, and she was diagnosed with right traumatic arthritis, right ankle and subtalar joint with nonunion of talus fracture. R. 690.

Since being discharged, follow up x-rays from January 2016 of the right ankle reveal structural improvement. R. 721. However, Plaintiff testified that she cannot stand due to pain in her ankle and that her heel always hurts. R. 44. She elevates her ankle at a chair length to relieve the pain. *Id.* When shopping at Walgreens, she uses a scooter or motorized cart and she cannot walk around the mall. R. 47. When at home, she spends most of her time in a recliner or on a bed with her legs elevated to relieve the pain. R. 56. Regarding her weight, she weighed 306 pounds at 5'7" (BMI of 47.9) at the time of the ALJ hearing. R. 47.

C. The ALJ's Decision

The ALJ went through the five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since September 11, 2014, when Plaintiff became disabled. R. 17. At step two, the ALJ found that Plaintiff had the following severe impairments from September 11, 2014 to March 31, 2016: fracture of the right ankle, status post ORIF, right avascular necrosis with non-union talus and

traumatic arthritis subtalor joint, status post fusion; and obesity. R. 18. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 from September 11, 2014 to March 31, 2016.

Before step four, the ALJ found that, from September 11, 2014 to March 31, 2016, Plaintiff had a residual functional capacity (RFC) to perform sedentary work with the following exceptions: she could never climb ladders, ropes or scaffolds; she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and she could have occasional exposure to unprotected heights and dangerous heavy moving machinery. R. 21. At step four, the ALJ found that Plaintiff could not perform any past relevant work from September 11, 2014 to March 31, 2016. R. 26. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could have performed, including telephone information clerk, account clerk, address clerk, escort vehicle driver, tube operator, and order clerk. R. 27. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. R. 28.

## STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to determine whether it is supported by "substantial evidence", meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743, F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

"The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). An ALJ must only "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). However, even when adequate record evidence exists to support the ALJ's decision, the decision will not be affirmed if the ALJ does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In addition, federal courts cannot build a logical bridge on the ALJ's behalf. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

## DISCUSSION

In the present case, Plaintiff argues that reversal or remand is proper because the ALJ: (1) failed in its listings analysis and (2) failed to properly evaluate Plaintiff's symptoms. The Court addresses each issue in turn.

A. Listings Analysis

At step three of the disability analysis, an ALJ must determine whether a claimant meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If a claimant meets or equals a listed impairment, he or she is presumptively disabled and does not need to make any further showing. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett*, 381 F.3d at 668). Here, the ALJ identified two listings when performing the step-three analysis: fracture of the femur, tibia, pelvis, or one or more of the tarsal bones (listing 1.06); and major dysfunction of a joint with involvement of one major peripheral weight-bearing joint (listing 1.02). R. 20-21. Plaintiff argues that the ALJ's findings as to listing 1.02A are not supported by substantial evidence.

In finding that Plaintiff's impairments did not meet listing 1.02A, the ALJ stated only: "the claimant does not meet listing or equal listing 1.02A, as there is no evidence of major dysfunction of a joint with involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively, as defined in l.00B2b." R. 21. Thus, the ALJ recited the criteria of that listing and simply stated that Plaintiff's impairments failed to meet the listing. *Id.*. This is "the very type of perfunctory analysis" the Seventh Circuit has "repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick*, 775 F.3d at 935-36. In *Minnick*, the ALJ stated that the plaintiff's degenerative disc disease did not meet or equal listing 1.04 since "[t]he evidence does not establish the presence of nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication, as required by that listing." *Id.* at 935. The ALJ in *Minnick* failed to recognize facts that could show that the claimant met or equaled the listing and dismissed that possibility in two sentences. *Id.* at 936. Here, the ALJ similarly dismissed the possibility that Plaintiff's impairments could meet any of the available listings. As in *Minnick*, the ALJ merely quoted the requirements of the listing and stated without any further analysis that Plaintiff did not meet those requirements. The ALJ's listings analysis is perfunctory and lacking.

The Commissioner argues that the ALJ expressly found that Plaintiff did not meet the severity of listing 1.02 because the evidence did not establish the inability to ambulate effectively. The listings define effective ambulation as follows:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home does not, in and of itself, constitute effective

ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2). However, the ALJ's decision did not actually discuss whether the Plaintiff could ambulate effectively, and under the *Chenery* doctrine this Court must confine its review to the grounds on which the ALJ made her finding. *See Spiva v. Astrue*, 628 F.3d 346, 352-53 (7th Cir. 2010 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)). Plaintiff testified that she used a motorized cart at the store and could walk around the mall, she could not stand due to pain, and at home she mostly sat in a recliner or with her legs elevated in bed. R. 22. The ALJ's decision recited this information (R. 22) but did not appear to take this evidence into account, or otherwise analyze Plaintiff's ability to ambulate, so the Court will not consider it now.

The Commissioner also argues that Plaintiff had the burden of showing that she met or medically equaled the listing requirements, which she did not do. In effect, the Commissioner is arguing that the ALJ's perfunctory analysis was harmless error. *See Dock v. Berryhill*, No. 16 C 50277, 2017 WL 5293901, at *5 (N.D. Ill. Nov. 13, 2017) (acknowledging a "limited opening for the harmless error doctrine" when a perfunctory analysis has been done). An error is harmless only when a court can "predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Seventh Circuit has remanded where the listings analysis was perfunctory and there was some evidence indicating that the plaintiff may have met the listing. *See, e.g., Minnick*, 775 F.3d at 936; *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Because the only evidence in the record demonstrated significant limitations in Kastner's range of motion, the ALJ's contrary conclusion is peculiar and unexplained.").

Here, the facts do not support the application of harmless error for listing 1.02 because it appears that there is evidence that Plaintiff's impairments could meet or equal listing 1.02. To meet Listing 1.02A the following is required:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff points to the fracture of her right ankle, status post ORIF, chronic joint pain and stiffness, and her inability to ambulate effectively as evidence that she meets or medically equals listing 1.02A. The Court agrees that the record contains evidence that may support a finding that Plaintiff's ankle joint meets or equals listing 1.02A. The ALJ's failure to discuss this evidence warrants a remand for an analysis of listing 1.02A.

In addition to listing 1.02, Plaintiff argues that she met listing 1.03, surgical arthrodesis

with inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03. This listing turns on the same analysis of effective ambulation as listing 1.02. *See id.* If Plaintiff can ambulate effectively as defined in the regulations, she does not meet listing 1.02 or 1.03. On the other hand, if Plaintiff cannot ambulate effectively and meets the other requirements of listing 1.03, then she would have a listed impairment. On remand, the ALJ should consider whether Plaintiff meets or equals 1.02 or 1.03.

### B. Symptoms Evaluation

The Court also finds that the ALJ erred in her symptoms evaluation. Because the case is being remanded on other grounds, this Court need not determine whether the ALJ's symptoms evaluation was "patently wrong." *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2001). However, on remand, the ALJ should refrain from using the "not entirely consistent" boiler plate language that has been criticized by the Seventh Circuit.

The ALJ used the following boiler plate language in her opinion:

> [T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 24. Variations of use of this language in making a credibility finding have been criticized by the Seventh Circuit because testimony cannot be rejected simply because it is not fully corroborated by objective medical evidence. *See Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir. 2015); *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014). The fact that an individual's statements are not "entirely consistent" with objective evidence is not an accepted reason to find against a claimant's credibility. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015). Its use has also raised concern as to whether the ALJ was applying the correct evidentiary standard. *See Minger v. Berryhill*, 307 F. Supp. 3d 865, 871-72 (N.D. Ill. 2018).

Moreover, the ALJ discounted Plaintiff's assertion that she needed to elevate her legs. The ALJ relied on the assertion that office treatment notes did not corroborate the allegation. R. 25. The ALJ does not explain how the office treatment notes contradict Plaintiff's assertion that she needed to elevate her legs daily. Without explanation, this Court cannot determine the ALJ's line of reasoning here and even if it could, federal courts cannot build the logical bridge on behalf of the ALJ. *Minnick*, 775 F.3d at 935.

Finally, Plaintiff argues that the ALJ failed to properly consider her obesity. Specifically, the ALJ did not explain how her obesity, in combination with her other impairments, affected her ability to work. Where a claimant suffers from obesity, the ALJ must "consider the effects of obesity together with the underlying impairments." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). "An assessment should also be made of the effect obesity has upon the individual's ability to perform routing movement and necessary physical activity within the work

environment." SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). "The combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.*

The ALJ recognized that Plaintiff is obese. She was five feet seven inches tall and weighed 306 pounds, corresponding to a body mass index (BMI) of 47.9. R. 22. The ALJ identified obesity as one of Plaintiff's severe impairments. R. 18. The ALJ explicitly stated that she considered Plaintiff's obesity in determining her RFC. R. 21. However, the ALJ does not actually explain how Plaintiff's obesity affected her impairments. In *Shumaker v. Colvin*, the Seventh Circuit found that the ALJ properly considered the plaintiff's obesity where the ALJ concluded that the obesity was a severe impairment, analyzed the effect of that impairment on the claimant's RFC by referencing the Social Security Administration's guidance for obesity, and incorporated several limitations into the RFC. 632 F. App'x 861, 867 (7th Cir. 2015). The ALJ here did not include any such analysis. On remand, the ALJ should consider this issue and determine whether and what effect Plaintiff's obesity had on her impairments.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment, Dkt. 14, is granted, and the Commissioner's motion, Dkt. 20, is denied. The decision of the Commissioner is reversed, and the case is remanded for the ALJ to analyze listings 1.02A and 1.03, and to reevaluate Plaintiff's symptoms beginning on September 11, 2014, consistent with this Memorandum Opinion and Order.

Date:   May 14, 2021                    ENTER:

*Margaret J. Schneider*
_____
United States Magistrate Judge